IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELLE CREVIER-GERUKOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0434 |
| | § | |
| EISAI, INC. AND EISAI CO., LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is an employment discrimination case. Michelle Crevier-Gerukos ("Gerukos") sued her former employer, Eisai, Inc. ("Eisai"), and its parent company, Eisai Co., Ltd., for retaliation under Title VII and age discrimination under the Age Discrimination in Employment Act ("ADEA").[1] Eisai moved to dismiss for failure to state a claim, arguing that Gerukos failed to timely exhaust her administrative remedies because she did not file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of her termination. (Docket Entry No. 3.) Gerukos responded to the motion, (Docket Entry No. 7), and Eisai replied, (Docket Entry Nos. 9 & 10). After this court converted the motion to dismiss into a motion for summary judgment, the parties submitted additional briefs and supplemented the record. (Docket Entry Nos. 19, 20 & 21.) Based on the pleadings; the motion, responses, and replies; the record; and the relevant law, Eisai's motion for summary judgment is denied. The reasons for this rulings are explained below.

**I.    Background**

---

[1] Eisai Co., Ltd., the Japanese parent company of Eisai, Inc., has not been served.

Gerukos worked for Eisai as a senior medical sales representative from April 1999 until October 8, 2008.  In February 2011, she sued Eisai in federal court, alleging that her employment was terminated because she was identified as a witness by two coworkers who had filed employment discrimination complaints and because she complained to Eisai's human resources department that she was "targeted" by Eisai's management after the coworkers identified her as a witness.  (Compl. ¶¶ 16, 19, 38.)   She further alleged that Darren Heath, Eisai's regional sales director, made inappropriate comments to her about her age and that she was "passed over for a transfer and a promotion" in favor of younger, less qualified employees.  (*Id.* ¶ 31.)

Eisai moved to dismiss Gerukos's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to timely exhaust administrative remedies.  Eisai argued that under federal law, Gerukos had to file a charge of discrimination with the EEOC by August 4, 2009, the 300th day after her termination.  Because Gerukos signed the charge of discrimination attached to her complaint on September 28, 2009, Eisai contended that Gerukos's claims were time-barred.  (Docket Entry No. 3, at 4.)  Gerukos responded that she had filed her charge of discrimination on June 19, 2009, and that the September 28 charge was a second filing.  She explained that she submitted the September 28 charge when an EEOC investigator told her that the June 19 charge "was not showing up in the system."  (Docket Entry No. 7, at 1.)  In support of her argument, Gerukos submitted an affidavit from Danya Fuller, the attorney who represented her in 2009, and a web printout of an EEOC intake questionnaire dated June 19, 2009.  (Docket Entry Nos. 7-1 & 7-2.)

Because Gerukos's response relied on submissions not properly considered under Rule 12(b)(6), this court converted Eisai's motion to dismiss into a motion for summary judgment and allowed the parties to supplement the record. The parties have submitted the following summary judgment evidence:

2

- The sworn and notarized "Charge of Discrimination," prepared on the EEOC's Form 5, that Gerukos attached to her complaint. Gerukos signed the charge on September 28, 2009. The charge lists 524-2009-01144 as the charge number. (Docket Entry No. 1-1, at 3–4.)

- The EEOC's December 15, 2010 dismissal and notice of rights. The notice and dismissal stated that "[b]ased upon its investigation, the EEOC [was] unable to conclude that the information obtained establishe[d] violations of the statutes" and that the EEOC was "closing its file on this charge." The notice and dismissal did not state that the EEOC was "closing its file" because Gerukos's charge was untimely. (Docket Entry No. 1-1, at 1.)

- Gerukos's affidavit. Gerukos stated that on June 19, 2009 she filed "a verified complaint with the EEOC office in Newark, New Jersey" and submitted an intake questionnaire with Fuller's help. Gerukos further stated that "the EEOC assigned charge number 524-2009-01144" to her filing and told her that an investigator would contact Fuller "to obtain the relevant documentation underlying the complaint." On September 20, 2009, after "no one from the Newark EEOC ever contacted" Fuller, Gerukos "accompanied [her] attorney to the Houston District EEOC Office to determine the status of [her] case." Gerukos stated that Patricia Palacios-Ware ("Ware"), an EEOC investigator, told her that she "had timely filed a complaint with the Newark EEOC office on June 19, 2009, but that the EEOC had lost" the charge. On September 28, the "Houston EEOC office interviewed [Gerukos] and directed [her] to complete a new charge." According to Gerukos, an EEOC representative told her that her first charge "would be considered timely." (Docket Entry No. 19-4.)

3

- Fuller's affidavit. Fuller stated that she "helped Plaintiff file her complaint with the EEOC District Office in Newark, New Jersey on June 19, 2009," which "provided [her] with charge number 524-2009-0144." On September 20, 2009, "after months of trying to have an investigator . . . from the New Jersey office" contact her "regarding the charge," she "accompanied Plaintiff to the Houston District EEOC Office." According to Fuller, an EEOC representative from the Houston office "confirmed that a charge had been filed in New Jersey on June 19, 2009, but said that the charge had been lost." (Docket Entry No. 19-3.)

- A web printout of an EEOC intake questionnaire dated June 19, 2009 that Gerukos filled out. The questionnaire contains: (1) Gerukos's name, address, and telephone number; (2) Eisai's name, address, and telephone number; (3) the names of the Eisai representatives responsible for Gerukos's alleged discrimination; and (4) a general description of Gerukos's retaliation claim. At the end of the form, Gerukos checked "Box 1." Box 1's explanatory text stated: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." Gerukos did not check "Box 2." Box 2's explanatory text stated: "I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC." Gerukos did not sign the questionnaire. (Docket Entry No. 7-1.)

- Ware's affidavit. Ware stated that "[t]he investigative file and EEOC computer records indicate that [Gerukos] contacted the EEOC on June 19, 2009, and indicated that she wanted to file a charge of discrimination. EEOC charge number 524-2009-01144 was assigned to her inquiry." Ware further stated that "[i]n September 2009,

> [Gerukos] visited the EEOC's Houston District Office in person and filed a formal Charge of Discrimination on an EEOC 'Form 5' document. I have no knowledge of [Gerukos] having submitted a 'Form 5' document to the EEOC's Newark office, and EEOC has no record of which I am aware of any such formal charge document[] having been filed prior to her September 2009 visit to the Houston District Office."

(Docket Entry No. 20-2, at 1–2.)

- A computer printout showing an EEOC charge-detail inquiry for Gerukos's charge number. The charge-detail inquiry reflects eight note entries on June 19, 2009. The note entries replicate the information Gerukos provided on the intake questionnaire. (Docket Entry No. 20-2, at 3–5.)

- Letters from the EEOC Houston District Office Director to three elected representatives who wrote to ask about the status of Gerukos's complaint. The letters state that the EEOC "has grave concerns about the timeliness of [Gerukos's] allegations. As you no doubt know, there is a 300-day statute of limitations for filing a[n] EEOC discrimination charge[]. [Gerukos] was terminated on October 8, 2008, but did not file with the Commission until September 28, 2009—355 days after her termination. We have struggled to find a reason to toll the limitation period, but have found none." (Docket Entry No. 10-1.)

Gerukos argues that Eisai is not entitled to summary judgment because there are disputed fact issues material to determining whether she filed a timely discrimination charge with the EEOC. Relying on the affidavits she and Fuller filed, Gerukos contends that she filed a verified discrimination charge on June 19, 2009, within the 300-day deadline. In the alternative, Gerukos argues that the intake questionnaire she submitted to the EEOC on June 19 was itself a charge of

discrimination. (Docket Entry No. 19, at 9–11.) Eisai responds that the summary judgment evidence conclusively demonstrates that Gerukos's charge of discrimination was untimely. Eisai points to the charge of discrimination prepared on the EEOC Form 5, which Gerukos signed on September 28, 2009, and to the three EEOC letters expressing "grave concerns" about the timeliness of Gerukos's discrimination charge. Relying on Ware's affidavit, Eisai argues that there is no credible evidence that Gerukos filed a verified charge of discrimination on June 19 or that she submitted the intake questionnaire to the EEOC Newark office on that date. (Docket Entry No. 20, at 2–3.)

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for

summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. Analysis

### A. The Title VII Claim

Under Title VII, it is unlawful for any employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is also unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful

employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* § 2000e-3(a). Before an individual can pursue a Title VII claim in federal court, she must first exhaust her available administrative remedies. *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378-79 (5th Cir. 2002). Exhaustion occurs when an individual files a timely complaint with the EEOC, her claim is dismissed by that agency, and the agency informs her of her right to sue in federal court. *Id.* at 379.

Title VII requires an aggrieved party to file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). Because Texas has a state agency for civil rights complaints—the Texas Commission on Human Rights—it is a "deferral state" in which Title VII extends the charge-filing period for discrimination claims to 300 days. *Id.*; *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645–46 (5th Cir. 1988). Compliance with the 300-day charge-filing period is not jurisdictional, but is a statute of limitations subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Granger v. Aaron's, Inc.*, 636 F.3d 708, 711 (5th Cir. 2011). Once the EEOC has issued a right-to-sue letter, an individual has ninety days in which to file a civil action in federal court. 42 U.S.C. § 2000e-5(f)(1). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor,* 296 F.3d at 379.

In this case, the alleged unlawful employment practice occurred on October 8, 2008, when Gerukos's employment was terminated. To timely exhaust administrative remedies under Title VII, Gerukos had to file a discrimination charge by August 4, 2009. Eisai argues that the record evidence conclusively demonstrates that Gerukos did not file a discrimination charge within the 300-day

deadline. Eisai relies on the Form 5 Charge of Discrimination, which Gerukos signed on September 28, 2009. Because Gerukos signed that charge 355 days after her termination, Eisai has satisfied its initial Rule 56(c) burden. The burden shifts to Gerukos "to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

Gerukos argues that there is a disputed issue material to determining whether she filed a timely charge of discrimination because she and Fuller testified in their affidavits that Gerukos filed a verified complaint with the EEOC on June 19, 2009. In her affidavit, Gerukos stated that she "filed a verified complaint with the EEOC office in Newark, New Jersey" "with the assistance of her attorney" on June 19. Gerukos also stated that she submitted the intake questionnaire to the EEOC on that date in addition to the verified complaint. Fuller's affidavit makes clear, however, that on June 19, Gerukos filed only the intake questionnaire and not a separate, verified complaint. Fuller stated that she "helped Plaintiff file her complaint with the EEOC District Office in Newark, New Jersey on June 19" and attached the "complaint" she helped Gerukos file as "Exhibit B-1" to her affidavit. Exhibit B-1 is the intake questionnaire. Fuller's affidavit did not distinguish between the intake questionnaire and a separate, verified complaint. Gerukos has not produced the "verified complaint" she asserts was filed with the intake questionnaire. There is no basis to infer that Gerukos lost the alleged "verified complaint" or that she inadvertently failed to submit it with her summary judgment papers. Although Fuller no longer represents Gerukos, Gerukos is represented by the same law firm Fuller worked for in 2009. Given Gerukos's admission that she filed the verified complaint "with the assistance of her attorney" and Fuller's explanation of what she filed on Gerukos's behalf, Gerukos's statement that she filed a "verified complaint" on June 19 does not

create a disputed issue material to determining whether Gerukos filed a timely charge of discrimination with the EEOC. *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, --- F.3d ----, 2012 WL 453745, at *5 (5th Cir. Feb. 14, 2012) ("The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. 'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." (citations omitted)).

Gerukos next argues that the intake questionnaire was itself a charge of discrimination. Relying on Ware's affidavit, Eisai responds that there is no "credible evidence" that Gerukos submitted the intake questionnaire to the EEOC on June 19, 2009. Gerukos has produced a web printout of the intake questionnaire, dated June 19, 2009. Both Gerukos and Fuller stated in their affidavits that Gerukos submitted the intake questionnaire to the EEOC's Newark office on June 19. Contrary to Eisai's argument, this evidence suffices at the summary judgment stage to create a disputed fact issue material to determining whether Gerukos submitted the intake questionnaire to the EEOC. Ware's affidavit does not support a different result. Ware stated that the EEOC had no record of "*formal* charge document[s]" that Gerukos filed before September 2009. Ware did not state that the EEOC had no record of Gerukos having submitted an intake questionnaire on June 19.[2] In addition, Ware attached to her affidavit a computer printout of an EEOC charge-detail inquiry for Gerukos's charge number. The charge-detail inquiry contains nine note entries on June 19 that replicate the information Gerukos provided on the questionnaire, including the misspelled word "reciept." The charge-detail inquiry provides strong evidence that the EEOC received Gerukos's intake questionnaire on June 19.

---

[2] Even if Ware had stated that the EEOC did not receive the intake questionnaire, there would still be a disputed fact issue based on the evidence Gerukos submitted.

Because the summary judgment record supports Gerukos's position that she submitted the intake questionnaire to the EEOC on June 19, Eisai is not entitled to summary judgment if the intake questionnaire qualifies as a discrimination charge. Title VII does not define what constitutes a "charge." "The statute, however, does provide at least two necessary conditions for a filing to be a charge, and those requirements are fleshed out by interpreting regulations." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 (6th Cir. 2011).

First, Title VII states that "[c]harges . . . shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). An EEOC regulation identifies five content requirements of a "charge": (1) the name, address, and telephone number of the person making the charge; (2) the name and address of the person against whom the charge is made; (3) a statement of facts describing the alleged discriminatory act; (4) the approximate number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. 29 C.F.R. § 1601.12(a). "The next subsection, however, qualifies these requirements by stating that a written charge is 'sufficient' if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Williams*, 643 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b)).

Second, Title VII provides that "[c]harges shall be in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b). "The EEOC regulations interpret this statutory command as requiring charges to be 'verified.'" *Williams*, 643 F.3d at 508. The regulations state that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. A charge is "verified" when it is "sworn to or affirmed before a notary public" or "supported by an unsworn declaration in writing under penalty of perjury." *Id.* § 1601.3(a).

11

An EEOC filing conforming to the regulatory "charge" requirements is not necessarily a "charge" under Title VII. "In addition to the information required by the regulations, . . . if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "Put differently, a filing is a charge if an 'objective observer' would believe that the filing 'taken as a whole' suggests that the filer 'requests the agency to activate its machinery and remedial processes.'" *Williams*, 643 F.3d at 508–09 (quoting *Holowecki*, 552 U.S. at 402). "It is true that under this permissive standard a wide range of documents might be classified as charges," but "this result is consistent with" the ADEA's "design and purpose." *Holowecki*, 552 U.S. at 402. "The ADEA, like Title VII, sets up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Id.* (citation omitted). "The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft." *Id.* at 403.

In *Holowecki*, the Supreme Court considered whether an EEOC intake questionnaire accompanied by a signed affidavit describing the alleged discriminatory practices was a charge of discrimination under the ADEA. The Court stated that the questionnaire, by itself, was not a "charge" because "its handwritten statements" did not request agency action and the "design of the form" did not "give rise to the inference that the employee request[ed] action against the employer." *Id.* at 405. The Court explained that "[u]nlike EEOC Form 5, the Intake Questionnaire [was] not labeled a 'Charge of Discrimination.' In fact the wording of the questionnaire suggest[ed] the opposite: that the form's purpose [was] to facilitate 'pre-charge filing counseling' and to enable the

12

agency to determine whether it has jurisdiction over 'potential charges.'" *Id.* But because the intake questionnaire was accompanied by an affidavit asking the EEOC to "[p]lease force Federal Express to end their age discrimination," the Court held that the filing was "properly construed as a request for the agency to act" and was, therefore, a charge. *Id.*

Applying *Holowecki*'s definition of a "charge" to the June 2009 EEOC filing in this case, the court concludes that Gerukos's intake questionnaire was a charge of discrimination under Title VII.[3]  First, the intake questionnaire contained all of the information outlined in 29 C.F.R. § 1601.12(a): Gerukos's name, address, and telephone number, as well as those of her employer; a statement describing the alleged retaliation; the approximate number of employees who worked for Eisai; and a statement indicating that she had not sought the assistance of any government agency regarding this matter. Gerukos's failure to sign and verify the intake questionnaire does not prevent it from being a valid charge if it was timely filed. The regulations state that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments . . . will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). Gerukos's September 28, 2009 verified "Charge of Discrimination" relates back to her original June 2009 filing. *See, e.g., Williams*, 643 F.3d at 509 ("Williams signed her second EEOC filing, the "Charge of Discrimination". . . , under penalty of perjury and, thus, verified it. For the technical purpose of verification, we conclude that Williams's

---

[3] Although *Holowecki* addressed the definition of a "charge" under the ADEA, courts have held that the same definition applies to a "charge" under Title VII. *See, e.g., Williams*, 643 F.3d at 509 n.2 (stating that "numerous courts have applied *Holowecki* in the Title VII context because of the similarities between the statutory schemes of the ADEA and Title VII concerning exhaustion of administrative remedies" (internal quotation marks omitted)); *Semsroth v. City of Wichita*, 304 F. App'x 707, 713 n.5 (10th Cir. 2008) ("While the *Holowecki* Court addressed the ADEA, we cite cases addressing the ADEA's filing requirements in the Title VII context because 'the filing provisions of the ADEA and Title VII are virtually *in haec verba*, the former having been patterned after the latter.'" (citation omitted)); *Asongwe v. Wash. Mut. Card Servs. & Subsidiaries*, No. 3:09-CV-0668-G, 2009 WL 2337558, at *3 (N.D. Tex. July 29, 2009) ("A number of federal courts, including two within this district, have extended [*Holowecki*] to Title VII.").

second filing amended—and verified—her first filing."); *Palmer v. Sw. Airlines Co.*, No. 08-C-6158, 2009 WL 3462043, at *4 (N.D. Ill. Oct. 23, 2009) ("Because Palmer signed and verified the charge she filed in April 2008, that verification relates back to Palmer's original filing in November 2007."); *Wood v. Kaplan Props., Inc.*, No. 09-1941, 2009 WL 3230267, at *5 (D.N.J. Sept. 29, 2009) (holding that the plaintiff's "subsequent Formal Charging document, which was signed under oath," related back to and cured the defects of an earlier-filed intake questionnaire); *Simmons v. Harman Mgmt. Corp.*, No. 2:06-CV-00834, 2008 WL 4862450, at *3 (D. Utah Nov. 7, 2008) (stating that "a filing need not be affirmed under oath at the time it is filed to be construed as a charge; it merely needs to be affirmed before the employer is required to respond to the allegations").

Second, "an objective observer" would interpret Gerukos's intake questionnaire as a request that the EEOC "activate its machinery and remedial processes." *Holowecki*, 552 U.S. at 402. At the end of the questionnaire, Gerukos had the option of checking one of two boxes: Box 1 or Box 2. The questionnaire provided the following instructions: "Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. . . . If you want to file a charge, you should check Box 1, below. If you would like more information before deciding whether to file a charge . . . you may wish to check Box 2, below." (Docket Entry No. 7-1, at 3.) Gerukos checked Box 1. The explanatory text accompanying Box 1 stated: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." (*Id.* at 4.) Gerukos did not check Box 2, which had explanatory text stating: "I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time." (*Id.*) In contrast to

Box 2's explanatory text, the Box 1 statement "I want to file a charge of discrimination" is reasonably construed as a request for EEOC action.  *See, e.g., Hammond v. Georgia*, No. 2:11–CV–00051–RWS, 2012 WL 181647, at *4 (N.D. Ga. Jan. 23, 2012) ("The Court finds that a reasonable person would conclude that by checking 'Box 1,' he or she had filed a charge of discrimination with the EEOC.  This is true even given the precautionary language on the coversheet of the questionnaire, which states, 'Filling out and sending us this questionnaire does not mean you have filed a charge.'"); *Mandel v. M & Q Packaging Corp.*, No. 3:09–CV–0042, 2011 WL 3031264, at *9 (M.D. Pa. July 25, 2011) ("[The plaintiff] checked a box on the questionnaire indicating 'I want to file a charge' and did not check the box stating 'I want to speak with an EEOC Representative before this is filed as a charge.'  This clearly demonstrates [the plaintiff's] intent for the EEOC to take action."); *Hawthorne v. Vatterott Educ. Ctrs., Inc.*, No. 09-CV-442-TCK-PJC, 2010 WL 3258560, at *4 (N.D. Okla. Aug. 17, 2010) ("The questionnaire warns claimants that, by checking the second box, they could lose their rights and fail to file their charge in time. This implies that, if the first box is checked, the questionnaire is sufficient to satisfy the EEOC's timeliness requirements for any allegations contained therein."); *Brahmana v. Lembo*, No. C-09-00106, 2010 WL 965296, at *1 (N.D. Cal. Mar. 17, 2010) ("Because [the plaintiff] checked the box indicating that he wanted to file a charge of discrimination, the questionnaire is reasonably construed as a request for the agency to take remedial action.").

Relying on the three letters from the EEOC Houston District Director to Gerukos's elected representatives, Eisai argues that the intake questionnaire was not a charge because the EEOC did not "consider" the questionnaire "to be a charge of discrimination."  (Docket Entry No. 20, at 3.) "In *Holowecki*, however, the Supreme Court expressly rejected the view that the Commission's failure to act means the filing is not a charge." *Staton v. U.S. Airways Inc.*, No. 10-1619-PHX-DGC,

2011 WL 855789, at *3 (D. Ariz. Mar. 11, 2011) (citing *Holowecki*, 552 U.S. at 403). How the EEOC treats a filing is not dispositive; what matters is whether "an objective observer" would reasonably understand the filing to be a request for the agency "to activate its machinery and remedial processes." *Holowecki*, 502 U.S. at 402. Courts "do not require evidence that the EEOC actually treated a filing as a charge to construe that document as such." *Semsroth*, 304 F. App'x at 713.

The record evidence clearly supports a finding that Gerukos submitted an intake questionnaire to the EEOC on June 19, 2009, within the 300-day deadline for filing a discrimination charge. Because Gerukos's intake questionnaire qualifies as a "charge" under Title VII, Eisai is not entitled to summary judgment on the Title VII retaliation claim.[4]

B.  **The ADEA Claim**

Under the ADEA, it is unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Like Title VII, the ADEA requires a plaintiff to exhaust administrative remedies by filing a charge of discrimination with the EEOC within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1)(B); *Julian v. City of Houston*, 314 F.3d 721, 725–26 (5th Cir. 2002). The ADEA implementing regulations define a "charge" as "a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in or is about to engage in actions in violation of the Act." 29 C.F.R. §

---

[4] This court's opinion in *Henderson v. Wal Mart Stores Tex., LLC*, No. H-10-0317, 2010 WL 1525551 (S.D. Tex. Apr. 14, 2010) does not compel a different result. In that case, the court held that a formal charge of discrimination filed after the 300-day statutory deadline did not relate back to an earlier filing. *Id.* at *5–8. *Henderson* did not involve an intake questionnaire similar to the one in this case, but a "written 'reply.'" *Id.* at *2. In addition, *Henderson* did not address whether the "written 'reply'" met the *Holowecki* definition of a "charge."

1626.3. The content requirements of an ADEA charge are similar to those of a Title VII charge. *See id.* § 1626.6; *id.* § 1626.8. The "only significant difference" is that the ADEA regulations do not require a charge of age discrimination to be verified. *Nadesan v. Tex. Oncology PA*, No. 2:10-CV-239-J, 2011 WL 147570, at *3 n.2 (N.D. Tex. Jan. 18, 2011).

The record evidence shows that Gerukos submitted the intake questionnaire to the EEOC on June 19, 2009. Under *Holowecki*, the intake questionnaire was a "charge" under the ADEA: it conformed to the content requirements of the implementing regulations and it requested agency action. Eisai is not entitled to summary judgment on the ground that Gerukos did not file a timely age discrimination charge.[5]

## IV. Conclusion

Eisai's motion for summary judgment is denied. A scheduling conference is set for **March 5, 2012 at 10:30 a.m.**

SIGNED on February 29, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[5] "Under both Title VII and the ADEA, a lawsuit stemming from EEOC charges is limited in scope to the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." *Kojin v. Barton Protective Servs.*, 339 F. Supp. 2d 923, 926 (S.D. Tex. 2004). A lawsuit "may be based, not only upon the specific complaints made by the employee's initial charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). The intake questionnaire alleged retaliation under the ADEA based on Gerukos's participation in a coworker's age discrimination complaint. The intake questionnaire did not allege that Gerukos was "passed over for a transfer and a promotion" in favor of younger, less qualified employees. (Compl. ¶ 31.) The court offers no opinion on whether Gerukos exhausted the ADEA claim asserted in this lawsuit. The court's holding is limited to the timeliness of Gerukos's charge of age discrimination.