**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHELLE CREVIER-GERUKOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0434 |
| | § | |
| EISAI, INC. AND EISAI CO., LTD., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

On August 21, 2013, the court entered a final judgment ordering that the plaintiff, Michelle Crevier-Gerukos, take nothing against the defendants, Eisai Co., Ltd. and Eisai, Inc., and dismissing all claims against the Eisai defendants with prejudice. (Docket Entry No. 101). The court order taxed allowable and reasonable costs of court against Crevier-Gerukos. (*Id.*). On August 30, 2013, Eisai submitted their bill of costs. (Docket Entry No. 103). Crevier-Gerukos filed objections to that bill of costs, (Docket Entry No. 104), and Eisai responded, (Docket Entry No. 111). For the reasons that follow, Crevier-Gerukos's objections are sustained in part and overruled in part.

The court may award costs under Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C § 1920. Federal Rule 54(d)(1) provides that "[u]nless a federal statute . . . provides otherwise, costs . . . should be allowed to the prevailing party." Taxable costs include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Civil Rule 54 does not permit a district court to award taxable costs beyond what Congress enumerated in §1920.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–43 (1987); *see also Cook Children's Med. Ctr. v. New Eng. PPO Plan*, 491 F.3d 266, 274 (5th Cir. 2007) ("[A]bsent explicit statutory or contractual authorization to the contrary," a court may decline to award the enumerate costs but cannot award costs omitted from that list. (quotation omitted)).

1.      **Fees for Necessary  Printed or Electronically Recorded Transcripts**

Fees for printed or electronically recorded transcripts necessarily obtained for use in the case are taxable costs.  28 U.S.C. § 1920(2).  Eisai submitted a bill of cost for $ 4,601.35 for these fees.  "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court."  *Fogleman v. ARAMCO*, 920 F.2d 278, 285–86 (5th Cir. 1991).  The same is true for daily trial transcripts.  *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994) (per curiam).  Because the statute refers only to "transcripts necessarily obtained for use in the case," transcripts of motion hearings and on-the-record conferences with the court are recoverable when  the court finds that "they were not obtained primarily for the convenience of the parties but were necessarily obtained for use in th[e] case."  *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983).  The defendants bear the burden of establishing necessity. *Fogleman*, 920 F.2d at 286.  "A finding of necessity is a factual finding." *Eastman Kodak Co.*, 713 F.2d at 133.

The Eisai defendants seek the following in costs for transcripts:

| | | |
|---|---|---|
| 1. | Transcript of Michelle Crevier-Gerukos's Deposition | $2,269.67 |
| 2. | Audio-visual Costs for Michelle Crevier-Gerukos's Deposition | $1,169.83 |
| 3. | Transcript of James Serwan's Deposition | $483.20 |
| 4. | Transcript of Hearing on Defendants's Motion for Summary Judgment | $90.75 |
| 5. | Transcript of Docket Call and Pretrial Conference | $600.00 |
| 6. | Court Reporter's Transcript Refund | ($12.10) |
| | Subtotal | $4,601.35 |

Crevier-Gerukos responded that the invoice for her deposition included the incidental costs of $437.72 for rush delivery, a $75.00 administrative fee, and $9.60 for "exhibit tab supplies." In response, Eisai agreed "to withdraw its request" to these three items. Crevier-Gerukos does not challenge any of the other costs associated with her deposition, the audio-visual costs, or the costs of James Serwan's deposition. The court sustains these three objections, reduces the taxable costs for the Crevier-Gerukos deposition to $1,747.35, and awards costs in that amount. In addition, the court awards the audio-visual costs for the Crevier-Gerukos deposition and the Serwan deposition.

Crevier-Gerukos also objected to fees for obtaining the transcript of the summary-judgment hearing and of the pretrial conference, arguing that Eisai "has provided no evidence to support its position that these are taxable costs." Eisai generally asserted that it needed these transcripts to determine whether to seek review of any adverse rulings. (Docket Entry No. 103 at 3 nn. 1, 3 (citing *Eastman Kodak Co.*, 713 F.2d at 133, *Harris Corp. v. Sanyo N. Am. Corp.*, 3-98-CV-2712-M, 2002 WL 356755 (N.D. Tex. Mar. 4, 2002) (holding that costs of *Markman* hearing and *Daubert* hearing transcripts were taxable as "necessary for counsel to determine whether to seek review of any adverse rulings."). In responding to Crevier-Gerukos's objection, Eisai gave more details explaining why it needed these transcripts. These details support the cost award.

First, the motion hearing.  On January 4, 2013, the court held a hearing on Eisai's motion for summary judgment, (Docket Entry No. 44).  At that hearing, the court granted the motion in part and denied it in part.  (Docket Entry No. 56 (minute entry for bench rulings)).  In March 2013, Eisai ordered the transcript, which was filed in April 2013.  (Docket Entry Nos. 57, 58).  On April 7, 2013, Eisai moved the court to reconsider its January 4, 2013 bench ruling denying the summary-judgment motion in part.  (Docket Entry No. 59).  In seeking reconsideration, Eisai cited the hearing transcript several times.  Because Eisai challenged a bench ruling, the motion-hearing transcript was necessary to Eisai's motion seeking review of that ruling.

Second, the pretrial-conference and docket-call transcript.  On August 2, 2013, the court held docket call and a final pretrial conference.  (Docket Entry No. 87 (minute entry for docket call)).  On August 5, 2013, Eisai sent a "reminder email for a request for the transcript from the Docket Call held on 8/2/13 at 3 p.m." (Docket Entry No. 103 at 13).  Eisai expedited the order because trial was to begin on August 12, 2013.  In response to Crevier-Gerukos's objections, Eisai argues that "the transcript of the pretrial conference [w]as necessary because the Court addressed during the conference numerous procedural and substantive issues, including the parties' motions in limine, exhibit objections, witness objections, mitigation of damages, and the period for which back pay was recoverable." (Docket Entry No. 111 at 3).  These "issues resurfaced throughout the trial [and] thus ready reference to the transcript was necessary to accurately and effectively prepare for and make these arguments.  (*Id.*).

A review of the trial transcript shows that the Eisai defendants specifically raised witness issues based on the court's rulings at docket call.  (Tr. 270–75).  Both sides argued issues relating to the court's limine rulings.  (Tr. 685–86).  The court finds that the transcript was necessary for

Eisai's defense and overrules the objections to the bill of costs for the transcript of the final pretrial hearing and docket call.

The court awards $4,079.03 for printed or electronically recorded transcripts.

**2.      Fees for Witnesses**

The Eisai defendants seek $6,962.77 in fees and disbursements for its witnesses under 28 U.S.C. § 1920(3) and $2,116.39 as "other costs" for fees associated with their corporate representative's travel expenses. Crevier-Gerukos raises three objections: (1) airfare expenses for certain witnesses were too high; (2) ground-transportation expenses for certain witnesses were too high; and (3) fees associated with Eisai's corporate representative should not be included.

**a.      Airfare Expenses**

"A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1).

Crevier-Gerukos challenges Parveen Hyder's $1,234.21 airfare from Detroit, Michigan to Houston, Texas; Tiffany Sills's $1,383.10 airfare from Newark, New Jersey to Houston, Texas; and Michael O'Brien's $1,379.10 airfare from Newark, New Jersey to Houston, Texas. Crevier-Gerukos argues that these round-trip fares were exorbitantly high because they were purchased at the last minute and Eisai did not explain why they were not booked in advance. Eisai responded that the trial schedule was finalized on Friday, August 2, 2013 in a hearing that did not adjourn until 5:35

p.m.  Hyder's plane ticket for August 12 was booked on August 6, 2013;  Sills's plane ticket for August 12 was booked on August 6, 2013; and O'Brien's August 13 plane ticket was booked on August 5, 2013.  (Docket Entry No. 103 at 39, 45, 48).

The record does not supply the information needed to determine whether these ticket prices were too high.  There is no information about available and feasible alternatives.  *See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 574 (5th Cir. 2005) ("[Plaintiff] has offered no evidence that [Defendants's witnesses] did not use the most economical rate available other than noting that [another witness], who flew from a different city . . . on different days, obtained a cheaper fare. . . .  Accordingly, the district court did not abuse its discretion in awarding travel expenses for these witnesses.").  The only record evidence about other airfares is the $468.30 round-trip ticket from New Orleans, Louisiana to Houston, Texas booked on August 7.  Crevier-Gerukos did not object to this price, but the ticket was booked on a different day from a considerably closer city.

Crevier Gerukos merely argues that "[p]resumably, the cost of the airfare would be considerably cheaper and any necessary scheduling changes could have been made at a reasonable cost.  As presented these high airfare costs are not at the most economical rate and should not be taxed against Plaintiff."  (Docket Entry No. 104 at 3).  This argument is unpersuasive because there is no evidence of other available alternative fares.  *Cypress-Fairbanks* does not stand for the proposition that any flights booked within seven days of departure are so unreasonably high that they cannot be recovered as taxable costs.  *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 257 (5th Cir. 1997).  Additionally, the Eisai defendants have explained why the tickets could not have been booked earlier.  The objection is overruled.

6

### b.   Ground Transportation Expenses

Taxable costs may include "taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt)."  28 U.S.C. § 1821(c)(3).  The Eisai defendants itemized a $101.99 car fare from Parveen Hyder's Michigan home to the Detroit airport, a $114.22 car fare from the Houston airport to his hotel, $110.22 car fare from his hotel to the Houston airport, and a $111.99 car fare from the Detroit airport to his Michigan home.  (Docket Entry No. 103 at 5).  The Eisai defendants also claimed car fares of $114.22 and $110.22 from the airport to the Houston hotel and the hotel to the airport for O'Brien.  Crevier-Gerukos points to a standard internet search of taxicab fares that the Houston airport-to-hotel taxicab route costs approximately $56.00 one way.  She seeks a reduction for each leg of travel.

In response, the Eisai defendants concede that the cost for each leg of the Houston airport-to-hotel car route is properly reduced to $56.00.  The Eisai defendants looked up the approximate standard taxicab fare to and from Hyder's Michigan home to the Detroit airport; it is $69.00.  Crevier-Gerukos's objection is sustained and the car-fare expenses are reduced down to the standard taxicab fare.  Accordingly, the reduced total for Hyder's travel expenses is $1,919.71 and the reduced total for O'Brien is $1,800.60

Eisai sought a total of $6,962.77 for witness disbursements.  That amount is reduced by $300.86 after sustaining Crevier-Gerukos's objections to the car fares.  Crevier-Gerukos's raised no other objections to the other witness disbursements that Eisai claims.  The court finds the unchallenged witness disbursements necessary and reasonable.  Accordingly, Eisai is awarded $6,661.91 in witness fees and disbursements.

### 3.   Travel Fees and Expenses for the Corporate Representative

In the "other costs" category on the bill-of-costs affidavit, Eisai seeks $2,116.39 in fees and disbursements for its corporate representative's travel and lodging. Crevier-Gerukos argues that the Eisai defendants should not be able to recover travel fees and expenses associated with their corporate representative's presence at trial. The representative, Illan Simon, was at trial but did not testify. Because § 1920 does not apply to parties, Crevier-Gerukos argues that the Eisai defendants should not be able to include Simon's travel costs in the bill of costs. The Eisai defendants respond that the district court has broad discretion to award fees and that this court should exercise that discretion in this case.

The case law does not support including the fees at issue in the taxable costs. "Witnesses who are corporate officers or employees are not necessarily real parties in interest." *Schmitz-Werke GMBH & Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734 (D. Md. 2003). Whether the costs for their presence is taxable depends on whether "'their interest in the litigation is no more than a natural concern for the welfare of the corporation as opposed to actual participation in the litigation to the extent they become identifiable as a party in interest.'" *Id.* (quoting *Elec. Specialty Co. v. Int'l Controls*, 47 F.R.D. 158, 162 (S.D.N.Y. 1969)); *see also Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2003 WL 1908032, at *5 (N.D.Ill. April 18, 2003) ("[The defendant] argues that Barbish's travel expenses are not recoverable because parties to a case may not collect witness fees for travel and subsistence expenses. Barbish was not a named plaintiff nor defendant in this case. He appeared at trial not only as [the plaintiff's] corporate representative but *also as a testifying witness*. [The defendant] fails to cite any authority holding that corporate representatives, as opposed to parties and real parties in interest, may not recover travel expenses. [The defendant's] objection is overruled."); *Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*, 68 F.R.D. 431, 433–34

8

(D.D.C.1975) ("Fees may be taxed in favor of a corporation which prevails for the *appearance* of its corporate officers and directors. . . . Yet these fees like those of any witness are limited to days spent in transit, *testifying or waiting to testify* and not in advising counsel") (citations omitted)); *Cincinnati Ins. Co. v. Dynamic Dev. Group, LLC*, 336 F.Supp.2d 552, 575 (M.D.N.C.2004) (noting that, under the Middle District of North Carolina's local rules, "[w]itness fees, subsistence, and mileage for individual parties, real parties in interest, parties suing in representative capacities, and the officers and directors of corporate parties " are separately indicated).

District courts in Texas have concluded that were a corporate representatives testifies, the corporation may be awarded statutory attendance fees and subsistence for the days the representative testified. "[W]here a corporate representative is not a controlling officer of the company, many courts have determined that the representative is entitled to the statutory attendance fee and subsistence provided for witnesses under 28 U.S.C. § 1821, although only for the day or days he appeared as a witness." *Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 583 (W.D. Tex. 2010) (citing *Ezelle v. Bauer Corp.*, 154 F.R.D. 149, 154 (S.D. Miss. 1994) (citing cases)). "This does not include the cost of corporate representative's flight, as airfare expense is a cost incurred in the person's capacity as a corporate representative." *Id.*

There is no hard and fast rule. The Fifth Circuit has rejected the argument that a defendant was not entitled to fees and costs for its corporate representative to attend trial when that representative was designated as a witness by both parties but was not called to testify "solely to save time at trial." *See United Teacher Assocs. Ins.*, 414 F.3d at 558 (citing *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1553 (5th Cir. 1984); *United States v. Lynd*, 334 F.2d 13, 16 (5th Cir. 1964) (per curiam)).

9

Here, the parties did not identify Simon as a testifying witness. He appeared solely as the corporate representative. He did not testify. The case law guidance does not support including the costs of his appearance in the corporation's taxable costs. The court sustains plaintiff's objection to Simon's expenses of $2,116.39.

**3.    Exemplification and Copying Fees**

The Eisai defendants identified $1,753.00 in "copy costs for reproducing pleadings and discovery-related documents"; $85.65 in "copy costs for records requests from third parties"; and $958.25 in "copy and exemplification costs for trial preparation." (Docket Entry No. 103 at 6-9). The defendants's counsel signed the affidavit on the cover of the bill of costs indicating that all costs were necessarily incurred in the action and that the services for which fees have been charged were actually and necessarily performed. The defendants have also provided receipts and client invoices detailing the number of copies made and the cost per page for each month in which copy costs were charged.

Crevier-Gerukos correctly points out that the Eisai defendants have not identified what documents were copied or why. For example, one itemized line states: "Copy Costs from April 1, 2013 through April 30, 2013 (see invoice dated May 14, 2013)[:] $1,069.20." (Docket Entry No. 103 at 7). The referenced invoice merely states "Copies[:] 10,692 .10 ea. $1,069.20." (*Id.* at 83). The same is true for the trial-preparation category. The itemization states: "Copy Costs from August 1, 2013 through August 14, 2013 (see ledger of unbilled costs dated August 19, 2013)[:] $451.60." (*Id.* at 7). The ledger only provides information about the number of pages and the cost per page. Under the description heading, the ledger only says "Copies" except for one $2.00 entry for copies of the jury charge. This level of detail, except for the jury-charge description, is

insufficient for an award of taxable costs.  *See Kellogg Brown & Root Int'l., Inc. v. Atlanmia Commercial Mktg. Co. W.L.L.*, 07-cv-2684, 2009 WL 1457632, at *6 (S.D. Tex. May 26, 2009) (Rosenthal J.).  Although an item-by-item description is not required, some information of the types or categories of documents copied and the reason for the copies must be furnished. *See Montgomery Cty. v. Microvote Corp.,* 2004 WL 1087196, at *7–*8 (E.D.Pa. May 13, 2004) ("The reports show the dates of the copies and the rate that was charged, however, the columns reserved for the description of what documents were copied are blank.  Without providing a description of the documents that were copied, the Court is unable to evaluate the necessity of the costs."); *Pion v. Liberty Dairy Co.,* 922 F.Supp. 48, 53 (W.D. Mich.1996) ("[T]he court will not endeavor to calculate the number of pages or documents for which costs are available; this task should have been performed by the defendant.").

The Eisai defendants's counsel submitted an affidavit stating that the in-house copies were "necessary for this litigation," but this conclusory assertion is not enough.  *See Montgomery Cty.,* 2004 WL 1087196, at *8 ("As for the affidavit of counsel averring that the costs sought were actually incurred, its conclusory statement that copies were 'reasonably necessary throughout the litigation' does not assist the Court in determining the nature, and the necessity, of the documents that were copied."). Without more explanation, this court cannot determine whether the copies were necessarily obtained for use in this case.  The defendants have failed to establish that the in-house copies claimed as costs were necessarily obtained for use in the present litigation.  *See Denner v. Tex. Dep't of Crim. Justice,* SA-05-CA-184-XR, 2007 WL 294191 at *7 (W.D. Tex. Jan. 29, 2007) ("The Court 'require[s] some demonstration that reproduction costs necessarily result from [the] litigation' beyond the mere conclusory recitation of the standard on the bill of costs."); *Pion,* 922

F.Supp. at 53 (disallowing copying costs where "[d]efendant's submissions . . .  d[id] not identify the number, substance, or purpose of the copies made in a manner sufficient to demonstrate that the expenses were reasonable or necessary"); *see also Fogleman,* 920 F.2d at 286 (stating that although the unsuccessful party "should be taxed for the cost of reproducing relevant documents and exhibits for use in the case, [the party] should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines.").

The court sustains Crevier-Gerukos's objection to including in the taxable bill of costs the in-house copying of discovery-related documents and pleadings, the copy costs from July 1, 2013 though July 31, 2013, and the copy costs from August 1, 2013 to August 14, 2013, except the $2.00 spent on copying the jury charge.  The objection is overruled as it relates to the copy costs for records requested from third parties, for a total of $85.65.  Those documents are specifically identified and the court finds that they were necessary for the case and not a mere convenience. Finally, for the $171.05 invoiced as copies of trial exhibits and CDs used for trial, the court overrules Crevier-Gerukos's objections. *See Eolas Techs. Inc. v. Adobe Sys. Inc.*, 891 F. Supp. 2d 803, 808 (E.D. Tex. 2012).

The objection to the $1,753.00 for reproduction of pleadings and discovery related material is sustained. the $958.35 for trial-preparation costs is reduced to $173.05 for the trial exhibits and $2.00 billed for copying jury instructions.  The total costs for exemplification and copying is $258.70.

**4.    Conclusion**

The court sustains in part and denies in part the objections to the Eisai defendants' taxable

bill of costs.  The total amount awarded is $10,999.64.

SIGNED on January 9, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge